

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-1995

# United States v Felton

Precedential or Non-Precedential:

Docket 94-5431

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Felton" (1995). *1995 Decisions.* Paper 138.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/138

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-5431

_____

UNITED STATES OF AMERICA

v.

DENNIS FELTON
Appellant

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Crim. Action No. 93-cr-209)

_____

Argued February 16, 1995

Before:   STAPLETON and COWEN, Circuit Judges,
          and HUYETT, District Judge[*]

(Opinion Filed  May 22, 1995  )

Chester M. Keller (argued)
Assistant Federal Public Defender
972 Broad Street
Newark, New Jersey 07102

          Attorney for Appellant

Faith S. Hochberg
United States Attorney
Jayne K. Blumberg
Alain Leibman (argued)
Assistant United States Attorney
970 Broad Street
Newark, New Jersey 07102

          Attorney for Appellee

_____

[*]   Honorable Daniel H. Huyett, 3rd, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT
_____

HUYETT, <u>District Judge</u>:

Appellant Dennis Felton was a tax examining assistant with the Automated Collection Service ("ACS") of the Internal Revenue Service ("IRS"). He was responsible for, among other things, contacting taxpayers with regard to collecting delinquent income tax payments. Felton offered delinquent taxpayers the opportunity to settle tax debts with the IRS for personal payments to him. He was convicted of one count of demand and acceptance of a bribe by a public official and five counts of unlawful gratuity demanded and sought by a public official.

Felton appeals his sentence on three grounds. First, Felton argues that the district court erred in adjusting his offense level upward by two levels pursuant to United States Sentencing Guideline section 3B1.1 for being a leader, organizer, manager, or supervisor of a criminal activity. Second, he argues that the district court erred in departing from the Sentencing Guidelines to make a one-level upward adjustment. Third, he argues that the district court made a mathematical error in its computation of his offense level that caused it to find him ineligible for a decrease in his offense level authorized by section 3E1.1 of the Sentencing Guidelines. We agree with Felton's third contention and vacate the district court's judgment of sentence and remand for resentencing.

## I. Factual and Procedural Background

In early September 1992, while working for the IRS, Felton received a telephone call from a Colonia, New Jersey taxpayer concerning approximately $22,000 she owed in taxes in connection with her 1990 Form 1040. In response to her inquiry as to whether she could be excused from penalties and interest on the money she owed, Felton telephoned her and told her that if she paid him, he would "take care of business." He arranged a meeting at a mall in New Jersey, where he told her that in exchange for a personal payment of $8,000, he would close the collection action, abate all penalties and interest, and arrange for the return of approximately $13,000 to her. Subsequently, she contacted the IRS Office of the Regional Inspector concerning this incident and participated in a controlled investigation. At an October 6, 1992 meeting, the taxpayer paid Felton $2000 and Felton told her that he wanted to receive the balance of the bribe payment when she received the refund check. The ACS received a return with falsified information, and in June 1993, the taxpayer received a refund check for $24,805.44. Felton was arrested on July 14, 1993 after he demanded and received the remaining $6,000 payment.

On Felton's arrest, he advised the authorities that his co-worker, Walter Clark, actually amended the return for the taxpayer and that Clark was to share equally in the payments. Felton needed Clark or some other person to participate in the schemes because Felton is legally blind and cannot alter tax returns alone. Following Felton's arrest, agents reviewed the files Felton and Clark handled and investigated the five other

frauds for which Felton was convicted. With Felton's cooperation, the authorities investigated Clark's involvement in the schemes and prosecuted him for his involvement in one fraud.

In the five incidents for which Felton was convicted of demanding a gratuity, Felton sought payments to prepare tax returns or resolve tax penalties or other tax problems. In some instances, he offered to reduce their individual tax liabilities and generate refunds in exchange for payments to him. In other instances, he solicited taxpayers by offering to amend their income tax returns and cause refunds to issue in exchange for payments to him. In several instances, he demanded and took money from taxpayers without performing services. In two frauds, involving taxpayers from Englewood, New Jersey and Mount Holly, New Jersey, Felton contacted taxpayers after they called the IRS to resolve their tax problems. The Mount Holly taxpayers later referred Felton as a tax adviser to their friends and relatives, which led to frauds against taxpayers in Burlington Township, New Jersey, Williamstown, New Jersey, and Budd Lake, New Jersey. The Mount Holly, Burlington Township, Williamstown, and Budd Lake taxpayers claimed that they did not know Felton was an IRS agent.

On April 22, 1994, Felton entered a guilty plea to an information charging him with one count of "demand and acceptance of bribe by public official," in violation of 18 U.S.C. § 201(b)(2), and five counts of "unlawful gratuity demanded and sought by public official," in violation of 18 U.S.C. § 201(c)(1)(B). A sentencing hearing was held on July 11, 1994. In the judgment, subsequently filed on July 20, 1994, the

district court adopted the factual findings and Guideline applications in the Presentence Investigation Report ("presentence report" or "PSR") except for three paragraphs. App. 115 (Judgment, July 20, 1994). Thus, the record reviewed includes the presentence report, the court's oral explanation of its decision at the hearing, and the judgment order.

At the sentencing hearing, the district court calculated a base offense level of ten, pursuant to section 2C1.1, "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right." As recommended in the presentence report, pursuant to subsection 3B1.1(c), the court raised the offense level by two levels because Felton played an aggravating role in the offense. The court also considered the specific offense characteristics provisions of section 2C1.1(b). First, the court adopted the probation office's calculation of a $31,295.44 loss attributable to Felton and increased the offense level by four levels because the aggregate harm exceeded $20,000, pursuant to subsection 2C.1.1(b)(2). Second, the district court rejected the probation officer's calculations and agreed with Felton that although the Guidelines authorized a two-level increase for multiple gratuities or multiple bribes, the Guidelines did not authorize an increase when there was just one bribe, but multiple gratuities. The court, however, used Felton's argument to depart from the Guidelines to increase the offense level by one level. Next, although the presentence report recommended a three-level decrease for acceptance of responsibility pursuant to section 3E1.1, the court granted only

a two-level decrease.  The court believed that by not imposing the two-level increase for multiple bribes, the offense level prior to the operation of subsection 3E1.1(a) was 15, and not 16 or greater, which would have permitted another decrease in offense level for timely providing information concerning involvement in offense or timely notifying authorities of his intention to enter a plea of guilty.  Finally, the district court granted a one-level downward departure, following the government's section 5K1.1 motion.

In summary, the district court's modification of the presentence report yielded an offense level of 14.  The following calculation reflects the order in which the offense level should be calculated, pursuant to the application instructions of section 1B1.1:

| | |
|---|---:|
| Base offense level, § 2C1.1(a) | 10 |
| Specific offense characteristics, § 2C1.1(b) | |
|     More than one gratuity or bribe | 0 |
|     Aggregate harm more than $20,000 | + 4 |
| Aggravating role in the offense, § 3B1.1(c) | + 2 |
| Acceptance of responsibility, § 3E1.1(a) | – 2 |
| Additional adjustment for acceptance of | |
|     responsibility, § 3E1.1(b) | 0 |
| Upward Departure from § 2C1.1 | + 1 |
| Downward departure, § 5K1.1 | – 1 |
| Total Offense Level = | 14 |

For an offense level of 14, the Guidelines prescribe a sentence within the range of 15 to 21 months.  USSG Ch. 5, Pt. A.  The district court sentenced Felton to 15 months on the bribery charge and 15 months on each of the gratuities charges, each to be served concurrently.

## II.  Discussion

We have appellate jurisdiction over this appeal from the final decision of the district court pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction in this criminal matter. See 18 U.S.C. § 3231. We review the district court's factual findings in relation to sentencing issues for clear error. United States v. Fields, 39 F.3d 439, 447 (3d Cir. 1994); United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993); United States v. Belletiere, 971 F.2d 961, 964 (3d Cir. 1992). A finding is clearly erroneous, if, after reviewing all of the evidence, we are left with the firm conviction that a mistake has been made. Belletiere, 971 F.2d at 969. Our review with respect to the district court's application and interpretation of the Sentencing Guidelines is plenary. Id. at 964; United States v. Bogusz, 43 F.3d 82, 85 (3d Cir. 1994); United States v. Murillo, 933 F.2d 195, 197 (3d Cir. 1991). When the application of the Guidelines presents a mixed question of law and fact, "our standard and scope of review takes on greater scrutiny, approaching *de novo* as the issue moves from one of strictly fact to one of strictly law." Belletiere, 971 F.2d at 964 (quoting Murillo, 933 F.2d at 198).

A. Adjustment for Aggravating Role

We first address Felton's argument that the district court's two-level increase for Felton's aggravating role in the offense was in err. The pertinent portion of section 3B1.1 of the Guidelines provides:

> Based on the defendant's role in the offense,
> increase the offense level as follows: . . .
> (c) If the defendant was an organizer,

> leader, manager, or supervisor in any
> criminal activity other than described in (a)
> or (b), increase by **2** levels.

USSG § 3B1.1.[1]  Section 3B1.1 requires the district court to find that "the defendant exercised control over at least one other person."  United States v. Katora, 981 F.2d 1398, 1402 (3d Cir. 1992).  See also USSG § 3B1.1, comment. (n.2) ("the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants").

Felton takes issue with the district court's determination that he was a leader in criminal activity.  This determination is essentially factual, therefore, we reverse the district court only if its conclusion was clearly erroneous.  Fields, 39 F.3d at 447; United States v. Phillips, 959 F.2d 1187, 1191 (3d Cir.), cert. denied, ___ U.S. ___, 113 S. Ct. 497, 121 L. Ed. 2d 434 (1992); United States v. Ortiz, 878 F.2d 125, 127 (3d Cir. 1989).

The presentence report mentions Clark in connection with three of the six incidents for which Felton was convicted, although Clark was only charged with and convicted of one fraud.  Neither Felton nor the government objected to the facts as presented by the probation office with regard to these three incidents.  With regard to the bribery concerning the Colonia taxpayer, Felton offered to arrange the return of taxes she

---

[1].  Subsections (a) and (b) concern situations where the defendant was a leader, organizer, manager, or supervisor of criminal activity that involved five or more participants or was otherwise extensive.

already paid to the IRS for a personal payment to him, Felton requested that the check be payable to him, and Felton requested documentation relating to her mortgage, sale of her home, and her profit sharing plan. Felton also scheduled meetings with her and agreed to adjust her current and past tax returns, Felton told the taxpayer how to make payments, and Felton personally accepted $6,000 in cash from the taxpayer. Clark, along with Felton and other Tax Examining Assistants, extended her account suspension. Clark also amended the taxpayer's income tax return, received $1,000 for this service, and Felton promised him another $3,000 after payment of the balance owed by her.

With respect to the Englewood taxpayer, Felton's first contact with the taxpayer was through the IRS toll free telephone number. Felton later contacted her to assist her with her tax problems, Felton requested money in exchange for purported services, and Felton received payments from this taxpayer. Clark only attended meetings at her residence with Felton.

With respect to the Mount Holly taxpayers, after the taxpayers had made numerous telephone contacts with IRS representatives, Felton contacted them. He told them that he could prepare and submit their income tax returns using information they provided, Felton denied that any illegality was involved, and Felton was paid by the taxpayers. According to the presentence report, Clark met one of the taxpayers with Felton, amended the tax return, and got some portion of the payment received by Felton.

The probation officer summarized their involvement and offenses as follows:

> 26. Felton made all initial and subsequent contacts with the victim's [sic] of this offense. He made preliminary judgments as to feasibility of amending their returns, and made the arrangements to gather necessary information from the victims to be used in amending the returns. He solicited the assistance of Walter Clark, who was responsible for amending some or all of the returns, in exchange for payment by Felton, and presumably provided Clark with the information necessary for amendment. Pursuant to 3B1.1(c), Felton was the organizer of the offense.

> 27. Clark's role was in assistance to Felton, such as transporting Felton to meetings with the victims, and taking notes during the meetings. While Clark was responsible for actually amending the returns themselves, his assistance was solicited by Felton, by whom Clark was paid. Pursuant to 3B1.2(b), Clark was a minor participant in the offense.

PSR ¶¶ 26-27. Neither party specifically objected to these paragraphs, although they both objected to the probation officer's characterization of Felton as an organizer in other parts of the presentence report. The court, however, considered Felton the leader, stating:

> There is no question that he should get the two point enhancement under 3B1.1(c). Mr. Felton's sentence should reflect his conduct without reference to whatever sentence Clark got and why. Under 3B1.1(c), Mr. Felton in my judgment was clearly the organizer, leader, manager of this criminal activity. He recruited Clark and, I suggest, others.

App. at 85 (Transcript).

"When a person manages or supervises another in the course of a criminal enterprise, the manager or supervisor will normally be more culpable than the person managed or supervised." United States v. Fuentes, 954 F.2d 151, 153 (3d Cir. 1992). "The direction and control of others is a recurrent theme in legal definitions of the terms 'manager' and 'supervisor.'" United States v. King, 21 F.3d 1302, 1305 (3d Cir. 1994). The record supporting the district court's conclusion that Felton was the organizer, leader, manager, or supervisor is not extensive, especially considering that at the sentencing, neither the prosecution nor the defense thought the increase was appropriate. However, several uncontested facts in the presentence report do tend to support the district court's conclusion that Felton played a supervisory role over Clark. First, Felton made all initial contacts with the victims of the fraud. Second, Clark performed much of the menial work of the scheme: he drove Felton to meetings with the victims, he took notes during those meetings, and he was given the responsibility of amending the victims' tax returns. While Felton's blindness -- and inability to perform these tasks -- no doubt diminishes the import of those tasks to determining Clark's role, we think that they do evidence the fact that Felton had at least some authority over Clark to have Clark do his bidding. Finally, the fact that Felton was involved in more incidents than Clark supports the district court's conclusion that it was Felton's scheme to begin with and that Felton "recruited Clark" to work for him. The evidence concerning their individual roles in the offense was sufficient

record evidence for the district court to conclude that Felton was an organizer, leader, manager, or supervisor, even though Clark did not participate in every scheme. The district court's finding was not clearly erroneous.

B. Departure from the Guidelines

We next consider Felton's argument that the district court erred in departing from the Sentencing Guidelines to adjust his offense level upward by one level. Generally, the district court must sentence a defendant within the applicable guideline range. However, when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described" the court may depart from the guideline range. 18 U.S.C. § 3553(b). See also United States v. Bertoli, 40 F.3d 1384, 1408 (3d Cir. 1994); United States v. Kikumura, 918 F.2d 1084, 1098 (3d Cir. 1990).

We review the district court's decision according to the model set forth in United States v. Kikumura, 918 F.2d 1084. First, we determine whether the circumstances upon which the district court relied to justify the departure were adequately considered by the Sentencing Commission. This requires a two-fold inquiry: we exercise plenary review over the district court's determination that the Guidelines do not adequately take a particular factor into consideration, Kikumura, 918 F.2d at 1098, and we apply a clearly erroneous standard of review to determine whether the facts support the sentencing court's

rationale. United States v. Seale, 20 F.3d 1279, 1287 (3d Cir. 1994); Kikumura, 918 F.2d at 1098. Second, we must determine whether the sentence imposed was reasonable. This also demands a two-fold inquiry: we consider whether the factors on which the court relied were appropriate and whether the degree of departure was appropriate. United States v. Ryan, 866 F.2d 604, 610 (3d Cir. 1989). In this determination, we permit the district courts to exercise a substantial amount of discretion. Bertoli, 40 F.3d at 1408; Kikumura, 918 F.2d at 1098. We address each issue in turn.

1. Adequate Consideration by the Sentencing Commission

We must first determine whether the Sentencing Commission took adequate consideration of the aggravating circumstance upon which the district court relied. In this case, the factual basis for departure was not disputed. The district court found that Felton accepted one bribe and five gratuities. The district court reasoned that the magnitude of Felton's schemes was an aggravating factor that the Sentencing Commission did not adequately consider.

The district court is permitted to examine only the Sentencing Guidelines, the policy statements, and the official commentary of the Guidelines to determine whether the Sentencing Commission adequately considered this aggravating factor. 18 U.S.C. § 3553(b); Kikumura, 918 F.2d at 1104.[2]

---

[2]. To minimize confusion in the arguments Felton advances, we briefly explain the Guideline sections applied. The Sentencing Guidelines require the district court to group together all counts involving substantially the same harm. USSG § 3D1.2. The

Section 2C1.1 requires a two-level increase in offense level, "[i]f the offense involved more than one bribe or extortion." USSG § 2C1.1(b)(1). Section 2C1.2, which would have applied had their been no bribes, requires a two-level increase "[i]f the offense involved more than one gratuity." USSG § 2C1.2(b)(1). The Guidelines, the policy statements, and the official commentary of the Sentencing Commission do not mention that an increase is available to raise the offense level for one bribe and multiple gratuities. See § 2C1.1(b)(1).

The court's analysis of this issue was not extensive. While making objections to the presentence report, Felton's counsel argued that the Guidelines do not permit the court to aggregate one bribe with multiple gratuities to increase the offense level by two levels because then the gratuities would be treated as bribes. The court appeared to accept this argument and used this argument to justify its departure from the Guidelines. An exchange concerning this issue was as follows:

> MR. KELLER: I'm saying that it's totally improper to start aggregating one bribe with certain gratuities and lump all these gratuities, all of a sudden to become bribes. . . .
>
> THE COURT: Well, suppose I don't give him those two points. Look, at the rate you're going I'm going to have to give him a present.

(..continued)
counts of bribery and gratuities must be grouped together. § 3D1.2(d). Because these counts involve offenses of the same general type, the court must apply the offense guideline that produces the highest offense level. § 3D1.3(b). Because the bribery provision, § 2C1.1, produces a higher offense level than the gratuity provision, § 2C1.2, the bribery guideline is used.

You know, I'm not going to buy this argument, though I'll tell you I am not going to not count five counts on which he accepted an illegal gratuity. So even if you're right on the law here, it would certainly be an appropriate ground for an upward departure. Right? You couldn't disagree with that.

MR. KELLER: Well --

THE COURT: Because this is conduct which would not otherwise be counted. So I mean I don't know, which way do you want me to go on that?

App. at 78-79 (Transcript). After a recess, the court explained

its departure from the Guidelines as follows:

I am going to grant Mr. Keller's objection to the -- what is it, 2C1.1 bribery or extortion language. This is very complicated. I think I could make an argument that because one is referred under the gratuity statute to 2C1.1, and that language of bribery or extortion, that perhaps Mr. Keller's argument should be rejected. But I'm not clear enough on it to say. It is just too murky. So I'm going to take off those two points.

That does not quite end the issue though. Because by taking off those two points, Mr. Felton is no longer eligible for the additional point on acceptance of responsibility. Because he's down into a -- what's it, a 15 instead of a 16. So all of that having been said, that's not to say Mr. Keller, because I told you I would, I'm going to give you the two points on that particular objection. **But I will upward depart and I will upward depart one level to compensate for the one level that is being lost on the acceptance of responsibility, third point**.

App. at 85-86 (emphasis added) (Transcript).

In the judgment order, the court explained its basis

for the upward departure as follows:

> Because one bribery and five gratuities were not aggregated to receive the 2 level increase under 2C1.1, the gratuities would not be punished absent an upward departure, a circumstance not adequately taken into consideration by the Commission.

App. at 114 (Judgment).

We reject Felton's argument that the multiple count provisions, found in Chapter Three, Part D of the Sentencing Guidelines, make clear that the Sentencing Commission considered the impact of multiple count convictions on the sentencing process and believed that certain offenses were so closely intertwined that they should not receive any increase under the Guidelines. As explained by the Sentencing Commission in its introductory commentary to the multiple count provisions:

> Some offense guidelines, such as those for theft, fraud and drug offenses, contain provisions that deal with repetitive or ongoing behavior. Other guidelines, such as those for assault and robbery, are oriented more toward single episodes of criminal behavior. Accordingly, different rules are required for dealing with multiple-count convictions involving these two different general classes of offenses.

USSG Ch. 3, Pt. D, intro. comment. The Sentencing Commission explicitly authorized a two-level increase in offense level for multiple bribes in section 2C1.1 and a similar increase for multiple unlawful gratuities in section 2C1.2. Thus, despite the multiple count provisions, the Sentencing Commission approved an increase in offense level for multiple bribes or gratuities, as compared to single instances of a bribe or a gratuity.

The Sentencing Commission authorized an increase in offense level for six bribes or six gratuities, but not for a combination of one bribe and five gratuities. The Sentencing Guidelines, the commentary, and the background notes do not indicate that the Sentencing Commission believed that this type of repeated unlawful conduct involving a bribe and gratuities should be treated less harshly than repeated unlawful conduct involving only bribes or only gratuities. Thus, it appears that the Sentencing Commission did not consider this result.

2. Reasonableness of the Adjustment

We also must consider whether the district court's upward adjustment was reasonable. Kikumura, 918 F.2d at 1110. Review is deferential. Id. at 1098. To determine whether the sentence was reasonable, we consider the factors set forth in 18 U.S.C. § 3553(a) and the reasons for the imposition of the particular sentence as stated by the district court, pursuant to section 3553(c). 18 U.S.C. § 3742 (Review of a sentence); Kikumura, 918 F.2d at 1098. We consider "whether the factors relied on are appropriate; and whether the degree of departure was appropriate." Kikumura, 918 F.2d at 1098 (internal quotations omitted). "In order to be 'appropriate,' a factor occasioning or contributing to an upward departure must be relevant to the defendant's culpability." United States v. Schweitzer, 5 F.3d 44, 48 (3d Cir. 1993).

The factors upon which the court relied were appropriate. The fact that Felton accepted multiple gratuities is relevant to his culpability because the Sentencing Guidelines

already meted increased punishment for public officials who accepted multiple bribes or multiple gratuities. To sentence pursuant to the Guidelines would have been equivalent to sentencing Felton for one bribe greater than $20,000 without reflecting the multitude of gratuities demanded or accepted. Furthermore, the degree of departure was appropriate. The increase in the offense level was no greater than the increase that would have been required for acceptance of two gratuities, had there been no bribery charges. Thus, we find no error in the court's upward departure.

C.  Reduction for Acceptance of Responsibility

Finally, we consider Felton's argument that the district court erred in its computation of his offense level, which caused the district court to find him ineligible for a third decrease in his offense level which was authorized by section 3E1.1 of the Sentencing Guidelines. The district court decreased Felton's offense level by two levels, pursuant to subsection 3E1.1(a). Felton argues that he should have received an additional one-level decrease pursuant to subsection 3E1.1(b).

Section 3E1.1 provides as follows:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

> (1) timely providing complete information to the government concerning his own involvement in the offense; or
> (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,
>
> decrease the offense level by **1** additional level.

USSG § 3E1.1. The district court is particularly well suited to evaluate a defendant's acceptance of responsibility. Therefore, its determination can only be reversed if we find it was clearly erroneous. United States v. Pardo, 25 F.3d 1187, 1193 (3d Cir. 1994).

Felton argues that the district court failed to grant him a reduction of one level pursuant to subsection 3E1.1(b) because it thought that he had an offense level of only 15 instead of 16. The transcript of the sentencing hearing and the ensuing judgment support this argument. Prior to the operation of subsection 1B1.1(a), Felton's offense level was sixteen, based on a base offense level of ten, a four-level increase for loss greater than $20,000, and a two-level increase for Felton's role as organizer. The court, however, said with respect to this issue:

> [B]y taking off those two points, Mr. Felton is no longer eligible for the additional point on acceptance of responsibility. Because he's down into a -- what's it, a 15 instead of a 16. So all of that having been said, that's not to say Mr. Keller, because I told you I would, I'm going to give you the two points on that particular objection.

App. at 107 (Transcript).  The court repeated this reasoning in the judgment as follows:

> 2C1.1 states that if the offense involved more than one "bribe or extortion" increase by 2 levels.  The offense here involved one bribe and five gratuities.  Because it is unclear whether this aggregate behavior can receive the 2 level increase, the two level increase was deleted.  As a result, the additional adjustment for acceptance of responsibility in paragraph 46 was deleted as well.

App. at 115 (Judgment).  The court's explanation was clear error.[3]  The government argues that Felton was not granted the additional one-level reduction because the district court could have made independent findings of fact that Felton failed to assist authorities.  The district court, however, never made any such findings.  The only evidence of Felton's failure to assist that the government can find is an offhand remark by the government's counsel that Felton embellished certain facts surrounding the offense in the course of aiding the authorities.

---

[3].  The government maintains that Felton never objected to the district court's refusal to give a three-level reduction and accordingly waived his right to appeal unless the mistake was plain error.  United States v. Pollen, 978 F.2d 78, 88 (3d Cir. 1992) (sentencing disputes reviewed for plain error where defendant fails to object in the district court but finding that the miscalculation in that case was plain error), cert. denied, ___ U.S. ___, 113 S. Ct. 2332, 124 L. Ed.2d 244 (1993).  Under a plain error standard, the court is concerned only with errors that seriously affect substantial rights or compromise the fairness of the proceedings.  Id.  This circuit and others have found that the miscalculation of a defendant's offense level "certainly is error that seriously affect[s] [the defendant's] rights, and so amounts to plain error."  Id. at 90; United States v. Moss, 9 F.3d 543, 553 (6th Cir. 1993) (application of clearly incorrect base level offense deemed clear error); United States v. Plaza-Garza, 914 F.2d 345, 348 (1st Cir. 1990).

The district court never referred to this comment, nor did it explicitly find that Felton failed to assist. The district court's reason for denying the third offense level decrease for acceptance of responsibility was clear error. We remand the case for resentencing on this issue.

### III.  Conclusion

In summary, we hold that the district court's reason for denying an additional decrease for acceptance of responsibility was clear error. The court did not err, however, in finding that Felton was a leader, organizer, manager, or supervisor, nor did the court err in departing upward one level in sentencing Felton. Accordingly, we will vacate the district court's judgment and order of sentence and remand with instructions for the district court to resentence Felton in accord with this opinion.