**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4132
_____

UNITED STATES OF AMERICA

v.

DANIEL GARRAUD,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 07-cr-00427-001)
District Judge:  Hon. R. Barclay Surrick

Submitted June 21, 2011

Before: CHAGARES, JORDAN and GREENAWAY, JR., Circuit Judges.

(Filed: June 28, 2011)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Daniel Garraud appeals his conviction for armed bank robbery on the grounds that

the evidence was not sufficient to sustain the verdict and that the District Court erred by

not suppressing evidence, by permitting improper statements by a witness, and by failing

to acquit him due to a speedy trial violation.  Garraud also appeals his sentence,

maintaining that the District Court considered an impermissible factor in determining his sentence. For the reasons that follow, we will affirm the judgment of conviction and sentence.

I.

We write for the parties' benefit and recite only the facts essential to our disposition. On June 29, 2007, at 9:35 a.m., a perpetrator committed an armed robbery of the Bank of America in Philadelphia, Pennsylvania, leaving with $22,343 in a green laundry bag with two GPS tracking devices embedded in the cash. Witnesses described the robber as a black male with large, deep eyes who wore a dust mask, latex gloves, a green and white Philadelphia Phillies hat, a dark hooded sweatshirt, blue jeans, and white sneakers. The robber was also carrying a semi-automatic handgun. Witnesses informed the police that the robber had fled toward Philmont Avenue. Police dispatch confirmed this direction using the GPS tracking devices and informed police officers that the robber was driving a motor vehicle in the direction of Route 1 and Roosevelt Boulevard.

Officers Richard Greger and Jerry Velez were stationed at the intersection of Route 1 and Roosevelt Boulevard looking at passing cars in an attempt to locate a person fitting the robber's description. The officers spotted a black male driving alone in a silver Acura and observed the vehicle come to a stop at a red light. Police dispatch advised the officers that the GPS devices indicated that the vehicle was stationary. Within seven minutes of the robbery, the officers pulled over the driver, Daniel Garraud, and observed in his vehicle in plain view a handgun holster, a dark plastic bag with a dust mask sticking out of it, and a green and white Philadelphia Phillies hat. Officer Velez arrested

2

Garraud and secured the evidence in the black plastic bag. When Federal Bureau of Investigation ("FBI") agents arrived at the scene, the agents confirmed that the GPS tracking devices were inside Garraud's vehicle. Witnesses were also taken to the scene and identified Garraud as having the same physical characteristics and clothing as the robber. After obtaining a proper search warrant, the agents discovered that Garraud's black plastic bag contained surgical gloves and a dark hooded sweatshirt in addition to the dust mask. Garraud's vehicle contained a semi-automatic firearm and a green laundry bag with $22,343 in cash attached to the GPS tracking devices.

Following his arrest, Garraud maintained that while he was driving to work in New Jersey he spotted two bags on the side of the road and stopped to pick them up. He stated that he never looked inside the bags. His statement was unable to be substantiated by work records, as Garraud was not expected to be at work on that Friday.

At Garraud's trial, evidence was presented that a cell site analysis traced Garraud's cell phone use prior to the robbery to the vicinity of the bank. The Government also presented DNA evidence that DNA traces left on the dust mask and clothing matched Garraud's DNA profile. Based on the physical, scientific, and eyewitness testimonial evidence provided at trial, on May 1, 2009, Garraud was found guilty of armed bank robbery, in violation of 18 U.S.C. § 2113(d), and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Garraud filed post-trial motions seeking acquittal based on a violation of the Speedy Trial Act and a new trial based on the admission of improper evidence and improper statements by a trial witness. The District Court denied Garraud's motions.

3

At sentencing, Garraud's advisory guidelines range for the armed robbery was forty-six to fifty-seven months of imprisonment with a mandatory minimum consecutive sentence of eighty-four months' imprisonment for the firearm conviction. Garraud argued that the mandatory minimum sentence for brandishing a firearm required a jury finding that such a weapon was used during the crime. He also requested that the Court show compassion in sentencing due to his lack of a prior criminal history. The District Court concluded that the mandatory minimum sentence for the firearm conviction was appropriate as the surveillance video at the bank revealed him brandishing a firearm. Additionally, the District Court recognized Garraud's lack of a criminal history, but determined that the violent nature of the crime coupled with his lack of remorse and acknowledgement of his actions did not justify a sentence outside of the guidelines range. On October 21, 2009, the District Court sentenced Garraud to fifty-four months of imprisonment for the armed robbery conviction with a consecutive sentence of eighty-four months' imprisonment for brandishing a firearm during the robbery. Garraud filed a timely appeal.[1]

## II.

Garraud brings six claims on appeal. He seeks a new trial based on the District Court's failure to suppress evidence, its improper admission of statements made at trial by a witness, and because the verdict was against the weight of the evidence. Additionally, Garraud argues that he is entitled to acquittal based on a sufficiency-of-the-

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

evidence claim and as a result of a speedy trial violation.  Garraud also challenges his sentence as unreasonable.

A.

We review the District Court's denial of a motion to suppress evidence for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts.  United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).  Police may perform an investigatory stop of a person when they have a reasonable, articulable suspicion that criminal activity is afoot.  Terry v. Ohio, 392 U.S. 1, 30 (1968).  Reasonable suspicion is a "less demanding standard than probable cause . . . in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."  Alabama v. White, 496 U.S. 325, 330 (1990).  In determining the legality of a Terry stop, we must ensure, considering the totality of the circumstances, that the officers had "'some minimal level of objective justification' for making the stop."  Id. (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)).

Garraud argues that Officers Greger and Velez did not have reasonable suspicion to stop his vehicle, and thus the evidence obtained as a result of this illegal Terry stop should have been suppressed.  The basis of Garraud's argument is that the officers' reasonable suspicion was not supported by the dispatch radio broadcasts and was based solely on race.  We disagree.  The record demonstrates that Officers Greger and Velez knew that (1) a bank robbery had occurred within minutes and miles from their position, (2) two GPS devices were tracking the perpetrator to their location, (3) they were looking

5

for a black male driving a vehicle into the intersection, and (4) the vehicle had become stationary once the only car with a black male driver had been identified at a red light. Considering the totality of the circumstances, we conclude that the officers met the minimal level of objective justification necessary for making the stop, and therefore, we will affirm the District Court's denial of Garraud's motion to suppress and deny his appeal for a new trial on this ground.

B.

With regard to preserved challenges as to the admissibility of alleged improper statements, we review the District Court's denial of a mistrial for abuse of discretion. Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 147 (3d Cir. 2002). Garraud contends that an unsolicited, isolated remark at trial by FBI Special Agent Steven McQueen referencing the Bureau of Prisons was improper and prejudicial. In responding to the Government on direct examination regarding how the DNA collection process works, McQueen responded: "First thing that would happen, we -- once we're over at the Bureau of Prisons and we make contact with the subject of the --." Before McQueen could complete his statement, Garraud objected to the reference to the Bureau of Prisons, arguing that such a statement inferred that he was incarcerated and, hence, considered dangerous. The District Court denied Garraud's motion for a mistrial, but at his request, provided the jury instructions on the statement: "Ladies and gentlemen, you are cautioned to completely disregard the last comment by the witness, the last statement by the witness. Do not consider it. Erase it from your memory."

6

We conclude that McQueen's statement does not provide grounds for a mistrial because (1) it was not specific to Garraud's actual incarceration in that it only provided a reference to a detention facility generally in describing a scientific process, (2) any possible inference the statement created as to Garraud's incarceration was cured by the Court's limiting instruction, and (3) the statement clearly did not affect the outcome of the trial in light of the overwhelming, uncontradicted evidence. See United States v. Rivas, 493 F.3d 131, 140 (3d Cir. 2007) ("A mistrial is not required where improper remarks were harmless, considering their scope, their relation to the context of the trial, the ameliorative effect of any curative instructions and the strength of the evidence supporting the conviction."). Therefore, we will affirm the District Court's denial of a mistrial based on McQueen's statement.

C.

In evaluating an allegation of a violation of a defendant's speedy trial rights, we review a District Court's legal conclusions de novo, its factual conclusions subject to a clearly erroneous standard, and its grants of continuances for an abuse of discretion. United States v. Rivera Constr. Co., 863 F.2d 293, 295 n.3 (3d Cir. 1988). Garraud asserts that the District Court violated his Sixth Amendment right to a speedy trial and the Speedy Trial Act, 18 U.S.C. § 3161(c), because twenty-two months elapsed from the time of his arrest until his trial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court established a balancing test to

7

determine whether an accused's Sixth Amendment speedy trial rights have been violated. Courts must weigh the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. Embodying this Sixth Amendment right, the Speedy Trial Act requires that a defendant be brought to trial within seventy days from his initial appearance. 18 U.S.C. § 3161(c). If the trial does not commence within seventy days, the Act requires the indictment to be dismissed. 18 U.S.C. § 3162(a)(2).

After a review of the record, we conclude that there has not been a Sixth Amendment violation or a violation of the Speedy Trial Act, as Garraud was the cause for any delay in his trial. Following his indictment on July 25, 2007, he requested an extension of time for discovery, which was granted by the District Court on September 13, 2007. Following the close of discovery in November 2007, Garraud once again sought to defer the trial in order to allow for plea negotiations. Garraud did not request a plea hearing until April 2008. The hearing occurred on June 6, 2008 and Garraud demurred from entering a plea. The District Court set a trial date for June 23, 2008, but Garraud requested and was given six trial continuances, all of which were granted after he waived the application of the Speedy Trial Act.

In weighing the factors set forth above, delays which are caused by the defendant or his attorney weigh against finding a violation. See Barker, 407 U.S. at 529 (recognizing that under the Sixth Amendment "if delay is attributable to the defendant, then his waiver may be given effect under the standard waiver doctrine"); United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994) (warning against defendants seeking dismissal

8

of indictments based on their own attorneys' requests for continuances under the Speedy Trial Act, and recognizing that defendants "cannot be wholly free to abuse the system by requesting (h)(8) continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted"). Since Garraud requested the delays he now complains of, we conclude that the District Court did not err in finding that there were no speedy trial violations.

D.

Garraud seeks acquittal based on a sufficiency-of-the-evidence claim, arguing that the evidence presented that he performed the bank robbery was purely speculation, conjecture, and surmise. Since Garraud failed to move for acquittal based on a sufficiency-of-the-evidence claim before the District Court, we will review for plain error. United States v. Miller, 527 F.3d 54, 62 (3d Cir. 2008). "A conviction based on insufficient evidence is plain error only if the verdict 'constitutes a fundamental miscarriage of justice.'" United States v. Thayer, 201 F.3d 214, 219 (3d Cir. 1999) (quoting United States v. Barel, 939 F.2d 26, 37 (3d Cir. 1991)).

We conclude that Garraud's sufficiency-of-the-evidence claim is not supported by the trial record. The record provides voluminous evidence linking Garraud to the robbery, including eyewitness testimony, DNA analysis, and the physical evidence of the robbery found in his car. Additionally, Garraud's own account of the events regarding how he obtained the spoils and physical evidence of the robbery was contradicted by the Government's testimony that he was not on his way to work at the time of the robbery.

9

Garraud's conviction does not constitute a fundamental miscarriage of justice, and we will therefore affirm his conviction in light of the sufficient evidence presented at trial.

E.

Garraud also claims that he is entitled to a new trial because the verdict was against the weight of the evidence. We review a District Court's denial of a motion for a new trial for abuse of discretion. United States v. Kelly, 539 F.3d 172, 181 (3d Cir. 2008). In this case, however, we need not reach the merits of Garraud's argument as he has waived his claim by failing to move before the District Court for a new trial based on the weight of the evidence. See United States v. Wright, 363 F.3d 237, 248 (3d Cir. 2004) (recognizing that "a judge has no power to order a new trial on his own motion" and "even if a defendant moves for a new trial, a trial judge may not grant a new trial on a ground not raised in the motion"). In any event, even if Garraud had moved for a new trial and that motion had been denied, we would have agreed with the District Court that the verdict was not against the weight of the evidence.

F.

We review sentences to ensure that they are substantively reasonable and imposed in a procedurally fair manner. United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008). We must first determine whether the District Court committed "significant procedural error," for example, by "failing to consider the [18 U.S.C.] § 3553(a) factors . . . or failing to adequately explain the chosen sentence." Id. (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). In conducting this procedural assessment, "[w]e review alleged factual errors for clear error but exercise plenary review over 'purely legal'

10

errors, such as a misinterpretation of the Guidelines or the governing case law." United States v. Brown, 595 F.3d 498, 526 (3d Cir. 2010) (citation omitted). If the District Court's decision is procedurally sound, we then consider the substantive reasonableness of the sentence "under an abuse of discretion standard." Id.

Garraud contends that his sentence was unreasonable because the District Court based his sentence on the fact that he failed to explain his criminal conduct and plead guilty in light of the overwhelming evidence presented. The District Court, however, only considered such factors in determining whether Garraud deserved a lower sentence based on "compassion." After reviewing the record, we conclude that the District Court did not err in sentencing Garraud within the advisory guidelines range and that the District Court meaningfully considered the § 3553(a) factors. We do not consider it improper that the District Court denied Garraud's request for a lower sentence based on compassion after determining that the violent nature of the crime coupled with Garraud's failure to accept responsibility for his actions weighed more heavily than his lack of a prior criminal history. Cf. U.S.S.G. § 3E1.1(a) (permitting a decrease in a defendant's offense level if the defendant clearly demonstrates acceptance of responsibility for his offense). Hence, we will affirm the sentence of the District Court.

### III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence of the District Court.